WILLIAMS, *Respondent,*

*v.*

STATE ACCIDENT INSURANCE FUND, *Petitioner.*

(WCB No. 76-4573, CA 10466)

584 P2d 327

Kenneth L. Kleinsmith, Associate Counsel, State Accident Insurance Fund, Legal Division, Portland, argued the cause for petitioner. With him on the brief were Keith R. Maloney, Chief Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund, Legal Division, Salem.

Keith R. Raines, Portland, argued the cause for respondent. On the brief was Curtis G. Oler, San Francisco, Calif.

Before Schwab, Chief Judge, and Thornton and Tanzer, Judges.

THORNTON, J.

## THORNTON, J.

Petitioner State Accident Insurance Fund (SAIF) seeks reversal of the Workers' Compensation Board (Board) order affirming a referee's finding that claimant is suffering from an occupational disease. SAIF argues that claimant has not established by a preponderance of the evidence that he is suffering from disease arising "out of and in the scope of * * * employment." ORS 656.802(1)(a). Upon a de novo review of the entire record, we find that claimant's burden has not been met.

Claimant alleges that he is suffering from psychological disorders as a result of the atmosphere existing in the Civil Rights Division (CRD) of the Oregon Bureau of Labor (Bureau) during his employment there. Claimant began working for the CRD as an investigator in 1971, and all went well for the first year and a half of his employment. He was promoted to conciliator in 1973.

About this time the position of Assistant Administrator of CRD became vacant. Claimant applied to be appointed to the position but was passed over in favor of another person. Sometime thereafter, for whatever reason, claimant started to have difficulties on the job in the form of friction with some of his supervisors and others in the Bureau. His superiors complained that his job performance declined considerably, that he was taking overextended coffee breaks and lunch hours, and was absent from his job a great deal. Claimant denied these charges. He alleged that he was being treated unfairly and in a racially discriminatory manner, that he was being subjected to official harassment and reprisal, and that claims of racial discrimination were given short shrift while CRD concentrated its efforts on allegations of sex discrimination. He began to have physical problems, such as loss of hair and stomach trouble. He was demoted to investigator, but sought reinstatement as a conciliator. He filed, or was involved in, several cases before administrative

tribunals as well as in the courts on issues relating to the job problems already described.[1] He spent much time away from his job, including a month's absence for health reasons on his physician's advice. During the latter absence he took a bar examination in California. One month later he was discharged.

Claimant testified that he could have worked immediately after his discharge, but his condition at the time of the hearing, nine months later, had deteriorated to the extent that he could not return and work effectively for CRD. Shortly after his discharge he sought compensation for a hand disorder, which claim was later denied. He then obtained work elsewhere, but quit after three months because of high blood pressure, insomnia, headaches and other physical problems. Four months after his discharge he began seeing a psychologist, who diagnosed the symptoms which made him quit his later job as manifestations of an "[e]pichotic, psychotic reaction of a paranoid schizophrenic nature" to the conditions to which claimant was subject in the CRD. The psychologist testified that claimant's reaction was severe because of claimant's belief that justice will prevail and claimant's horror that an agency of the government which was charged with eradicating discrimination was actually practicing discrimination. He also testified that claimant had, understandably, a preexisting condition of strong resentment to racism. The psychologist apparently did not consider claimant's unsuccessful attempts to pass bar examinations (which claimant testified caused him no stress), or death of claimant's father (which claimant did consider stressful), to be material causes of claimant's psychological disorder.

---

[1] *See, Williams v. Civil Rights Div.,* 30 Or App 983, 568 P2d 707 (1977), *rev den* 281 Or 1 (1978); *Civil Rights Div. v. Williams, 28 Or App 651, 560 P2d 673, aff'd* 280 Or 595, 573 P2d 270 (1977); *Williams v. State of Oregon,* Bureau of Labor, EEOC No. TSE5-1723 Amended (April 13, 1976).

We do not reach the issue of whether a job climate can produce a compensable psychological disease.[2] Nor need we determine whether the discrimination which claimant alleged actually existed. In our review of the whole record, in which we have considered the opinion of the expert, *see, Harrison v. SAIF,* 24 Or App 799, 800, 547 P2d 164, *rev den* (1976), we find that claimant has not established by a preponderance of the evidence that he has an occupational disease which rendered him incapable in any degree of performing his job at the Bureau, or that any psychological problem he may be experiencing was caused by his employment with the Bureau. *Accord: Friesen v. Gould, Inc.,* 18 Or App 120, 523 P2d 1285 (1974); *cf., Kinney v. S.I.A.C.,* 245 Or 543, 423 P2d 186 (1967).

Reversed.

---

[2]We have held that a psychological condition arising out of, or exaggerated to a degree by, an industrial injury may be compensable as a disabling injury. *Hargens v. SAIF,* 34 Or App 311, 578 P2d 495 (1978).